UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEVEN GOLDSMITH, *on behalf of himself and all other similarly situated*, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 4:19-cv-1772-MTS |
| LEE ENTERPRISES, INC., *et al.*, | ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Before the Court is Defendants' Renewed Motion for Summary Judgment, Doc. [108], pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the Court grants Defendants' Motion.

**I.    INTRODUCTION**

This case is about whether the *St. Louis Post-Dispatch* illegally charged Plaintiff twice for the same newspaper. Early in the ongoing dispute, Defendants previously moved for summary judgment—before engaging in discovery—arguing Plaintiff cannot show he suffered any loss or damages. Doc. [31]. Out of an abundance of caution, Judge Autrey denied Defendants' motion without prejudice, specifically so that Plaintiff could engage in discovery and look at Defendants' internal accounting, *ie:* billing records. Doc. [69]. Since then, discovery has concluded; Plaintiff got the answers sought and discovered how the charges and rates were conveyed to him.[1] The

---

[1] Plaintiff previously requested discovery so he could understand, among other things, "the reasons for overlaps and gaps in the date ranges in Plaintiff's invoices" and "how defendants determined the[se] date ranges." Doc. [69] at 6–7. Judge Autrey agreed discovery was necessary so that Plaintiff could understand how Defendants' internal counting works, such as definitions and calculations of rates, charges, credits, etc. *Id.* at 10. Post-discovery, Plaintiff obtained records showing how overlaps work and how funds are credited and debited to his account. The Court understands that without these answers (pre-discovery), it is understandable that Plaintiff believed he was being charged twice for the same newspaper; post-discovery, however, Plaintiff can no longer conflate overlaps as a factual basis to assert that Defendants were in fact "double-billing."

1

billing records show Plaintiff received every newspaper for the periods included in his claim and that he did not pay twice for any of them.[2] Thus, Plaintiff cannot show any loss or damages.[3] For these reasons and additional reasons discussed below, the Court grants Defendants' Motion for Summary Judgment.

**II.    BACKGROUND**

This case arises from allegations by Plaintiff Steven Goldsmith that Defendants Lee Enterprises, Inc., Lee Enterprises Missouri, Inc., St. Louis Post-Dispatch LLC and Pulitzer Inc. (collectively, "Defendants") double-billed him for his subscription to the *St. Louis Post-Dispatch* (the *"Post-Dispatch"*) newspaper.

The undisputed facts are as follows.[4] The *Post-Dispatch* uses a system known as DISCUS to manage its billing and subscriber information. As with most publications, subscribers to the *Post-Dispatch* pay in advance as opposed to paying in arrears. For billed subscribers, DISCUS generates bills eliciting payment for newspapers it *anticipates* delivering during a "Term" stated in the bill, *not for newspapers already delivered*. Bills are typically delivered ten days before the first date of the "Term," with a stated due date thereafter. The length of a "Term" is a period selected by the subscriber of 4, 5, 8, 13, 26 or 52 weeks. A bill's "Term" can change based on events after the bill is issued, including changes in delivery frequency, customer choice, credits,

---

[2] Previously, Plaintiff specifically sought discovery to understand Defendants' subscription accounting. Doc. [34]; *see also supra* Note 1. Plaintiff cannot *now* claim that the way the *Post-Dispatch* accounts for payments *internally* is irrelevant. Doc. [115] at 1.

[3] Judge Autrey found "Plaintiff's loss remain[ed] a disputed fact" and thus, allowed discovery in order to understand how Defendants' internal accounting works. Doc. [69] at 10. Post-discovery, however, it appears that Plaintiff received every newspaper for the periods included in his claim and that he did not pay twice for any of them; thus, Plaintiff's loss, or lack thereof, is no longer a disputed fact, but rather shows Plaintiff cannot meet his burden of proving the essential elements of his claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[4] The Court has limited the facts presented here to those that are not in dispute and relevant to this Motion. The Court has also excluded legal conclusions, argument presented as fact, and proposed facts that are not properly supported by admissible evidence. *See* Fed. R. Civ. P. 56(c).

2

debits, and addition and timing of special editions, called Plus editions.[5]

When the *Post-Dispatch* bills subscribers via an "invoice," it states a "Term" with a beginning and ending date, and by paying the invoice, a subscriber pays for the dates covered by that Term.  When a subscriber sends money to the *Post-Dispatch* in response to an invoice, that money is posted to the subscriber's account, increasing the balance of the account by the amount paid and providing funds to cover newspapers.  The money in the account stays in the subscriber's account until used to pay for newspapers.[6]  DISCUS deducts the applicable newspaper rate from a subscriber's account for each newspaper once, and only once.  Subscribers can cancel their subscription any time, even mid-term.  When a subscriber cancels his or her subscription, the *Post-Dispatch* refunds the balance in his or her account and returns the money.

The *Post-Dispatch* regularly sent Plaintiff invoices for his home-delivery subscription that contained the date of the invoice, a "Term" with beginning and ending dates, an "Amount Due," and a breakdown showing the components of the price.  Sometimes Plaintiff received bills with overlapping "Terms," meaning that his current bill contained a date that was included in the preceding bill.  This practice of billing Plaintiff with overlapping dates (and using the overlap in payments to cover future newspapers) gave rise to Plaintiff's allegation that Defendants unlawfully "double-billed" subscribers.  By alleging that the *Post-Dispatch* "double-bills," Plaintiff asserts that he paid for certain days of his subscription on two separate occasions (*ie*: paid twice for the same newspaper).  Despite these allegations, it is undisputed by Plaintiff that DISCUS does not deduct the applicable rate twice for a single newspaper.  Doc. [114] ¶ 7–8.

---

[5] Plus editions are delivered infrequently and are an additional charge over a subscriber's regular subscription price. Doc. [110] at 5.  Plus editions contain extra content and cost more to produce and deliver.  *Id.*  As a result, the rate for Plus editions is higher than the rate for weekday and Saturday editions. *Id.*

[6] DISCUS maintains an account for each subscriber.

Plaintiff filed an Amended Complaint, Doc. [17], asserting six counts against Defendants for: (1) Breach of Contract (Count I); (2) Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II); (3) Unjust Enrichment (Count III); (4) Money Had and Received (Count IV); (5) Violation of the Missouri Merchandising Practices Act ("MMPA") by Unfair Practices (Count V); and (6) Violation of the MMPA by Means of Deception (Count VI).  In the instant Motion, Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Doc. [108].

### III.   LEGAL STANDARD

"A court must grant a motion for summary judgment if the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (*citing* Fed. R. Civ. P. 56(a)).  The movant bears the initial burden of explaining the basis for its motion, and it must identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).  The moving party's burden may be discharged by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the nonmoving party fails to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof, the moving party is "entitled to a judgment as a matter of law." *Id.* at 323.  The court views any factual disputes in the light most favorable to the nonmoving party, but only if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007).  In reviewing the record at the summary judgment stage, a court must not weigh evidence but, instead should decide simply whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)

4

(reserving decisions for the jury, not the judge, that concern credibility determinations, how to weigh the evidence, and what inferences to draw from the evidence).

## IV. DISCUSSION

At issue is the *Post-Dispatch*'s practice of billing customers for overlapping dates and unilaterally using the overlapping payments to cover future newspaper payments. A plain look at the record shows no genuine disputes of material facts; Defendants need only show that Plaintiff cannot meet his burden of proving the essential elements of his claims. *Celotex*, 477 U.S. at 323. Here, Plaintiff's inability to show damages from the *Post-Dispatch*'s billing practice—for example, paying twice for the same newspaper—or establish that such practice is illegal or in violation of existing precedent is fatal to all six of his claims. Accordingly, the Court grants Defendants' Motion as to all counts because Plaintiff, the nonmoving party, failed to make a sufficient showing on essential elements of his case such that Defendants are "entitled to a judgment as a matter of law." *Id.*

### 1. Breach of Contract

Count I asserts a breach of contract claim. In order to establish breach of contract under Missouri law, Plaintiff must show: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff. *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010). The undisputed facts show that Plaintiff never paid twice for a newspaper; Plaintiff received the benefit of the bargain. With DISCUS, payments are posted to Plaintiff's running account, and debited once, and only once, for each newspaper—Plaintiff himself acknowledges that DISCUS does not deduct the applicable rate twice for a single newspaper. Doc. [114] ¶ 7–8. So, although, the *Post-Dispatch* may have billed Plaintiff "twice"

5

for overlapping dates, the *Post-Dispatch* never charged him twice, and Plaintiff provides no evidence that he paid twice for the same newspaper. Therefore, Plaintiff's breach of contract claim fails because the fourth element is not met: Plaintiff has not shown he paid twice for the same newspaper—or in other words, suffered any damages.[7] *Cornejo v. Crawford Cnty.*, 153 S.W.3d 898, 902 (Mo. Ct. App. 2005) (holding that a party claiming damages for breach of contract bears the burden of proving the existence and amount of damages).

Nonetheless, in an effort to create a disputed fact, Plaintiff points to the record—specifically, to depositions of three *Post-Dispatch* witnesses—to show that they "admit[] that a subscriber who pays an overlapping bill pays twice for the same papers." Doc. [115] at 7. However, based on the cited evidence, the Court does not find that a reasonable jury could conclude Plaintiff paid twice for the same newspaper.

First, Plaintiff points to the deposition of Courtney Wright ("Wright"), the software architect who works with DISCUS. Doc. [115] at 7 (*citing* Doc. [107-6] at 52 (198:21–25; 199:1–13)). However, Wright definitively states that although it may "appear" that a customer is being charged twice for the same newspaper, "it's technically not possible for double billing to have a double charging effect on a subscriber." Doc. [107-6] at 52 (198: 9–10).

Second, Plaintiff points to the deposition of Don Hesse ("Hesse"), the Vice President of HR, Labor, and Operations. Doc. [115] at 7 (*citing* Doc. [107-18] at 7 (19:21–25; 20:1–5)). Yet, Plaintiff's cited testimony relates to Hesse confirming the fact that subscribers sometimes make payments in response to bills with overlapping dates—*not* that subscribers pay twice for the same newspaper. *Id.* Even when Plaintiff asked Hesse, point blank, if subscribers were being charged

---

[7] Although there is a dispute regarding whether Plaintiff's subscription with the *Post-Dispatch* was a single "ongoing" contract or a "series of isolated contracts of fixed durations," the Court will not address this issue because Plaintiff's claim fails on other grounds.

6

twice, Hesse stated that "the bills may have overlapping dates, but we never charged their account twice for the same [paper]." Doc. [107-18] at 7 (18:15–20).  Even in a second deposition with Hesse, he "disagreed" with Plaintiff's assertion that when a subscriber was "charged twice because there was an overlap from one bill to the other[,] that they were charged the first time and then charged for those same dates the second time." Doc. [107-1] at 32 (120:17–21). In fact, in responding to Plaintiff's assertion, he stated that the subscribers' accounts were "never double charged, never charged twice for the same day." *Id.* at 32 (120:22–24).  According to Hesse, "subscribers' accounts always got charged exactly what they were delivered." *Id.* at 32 (120:14–16).

Finally, Plaintiff points to a deposition of Patricia Helfrich ("Helfrich"), the Customer Service Manager in the *Post-Dispatch*'s Circulation Department. Doc. [115] at 8 (citing Doc. [107-19] at 22–23 (81:11–25; 82:1–8)). Specifically, Plaintiff alleges that Helfrich "agreed" that a subscriber—who previously filed a complaint with the Missouri Attorney General—similarly paid two bills with overlapping dates and was charged twice for the same dates. Doc. [119] ¶ 59. However, the deposition shows that Helfrich stated, "I don't agree with his terminology that he's getting charged twice for the same product because he is not. He's getting billed for the papers he received." Doc. [107-19] at 23 (82:21–24).

The record shows that Plaintiff sometimes made payments in response to invoices with overlapping dates; however, there is no record evidence showing he paid twice for the same newspaper—in fact, the record unequivocally refutes such an assertion. The Court comes to this conclusion not by weighing evidence, but instead, by determining there is no genuine issue for trial based on Plaintiff's failure to prove a necessary element of his claim—damages. *Anderson*, 477 U.S. at 249 (holding that a court, in reviewing the record, must not weigh evidence at the

7

summary judgment stage but instead should decide simply whether there is a genuine issue for trial); *Celotex*, 477 U.S. at 323.  Therefore, because Plaintiff cannot prove he sustained damages as a result of receiving a handful of bills for overlapping days, his breach of contract claim fails as a matter of law. *Cornejo*, 153 S.W.3d at 902; *Celotex*, 477 U.S. at 323.

Accordingly, Defendants are entitled to summary judgment on Count I.

**2. MMPA**

Counts V–VI allege Defendants violated the MMPA.  The MMPA prohibits the use of any "unfair practice . . . or the concealment . . . of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . whether committed before, during or after the sale, advertisement or solicitation." Mo. Rev. Stat. § 407.020.1.  To prevail on an MMPA claim, a plaintiff must demonstrate that he: (1) purchased or leased merchandise; (2) primarily for personal, family or household purposes; and (3) thereby suffered an ascertainable loss of money or property, real or personal; (4) as a result of the defendant's use of one of the methods or practices declared unlawful by Section 407.020. *Id.*

Plaintiff alleges Defendants violated the MMPA by "billing or charging subscribers to the *St. Louis Post-Dispatch* for overlapping days as part of two separate invoices or charges, so that the subscribers are double-billed for these days." Doc. [17] ¶ 120.  Specifically, Plaintiff contends the *Post-Dispatch*'s billing practices are "unfair and unethical" because he paid for certain days of his subscription on two separate occasions. *Id.* ¶¶ 120–123.  These allegations, however, are inconsistent with the undisputed facts.  As discussed above in Section 1, Plaintiff has no damages because he never paid twice for the same newspaper even though it may have appeared that he did. This case is not one where the *Post-Dispatch* billed the overlaps and then pocketed the excess money.  In fact, the undisputed record shows that the *Post-Dispatch* specifically does *not* engage

8

in such a practice. *See, e.g.*, Doc. [107-1] at 17 (61:9–11). Rather, the undisputed record shows the *Post-Dispatch* stored the overlapped payments in an account and used it to cover deductions for the next "Term's" paper and would refund the balance in his account if and when Plaintiff canceled his subscription.

Moreover, Plaintiff cites to no case law or factually similar precedent showing that the *Post-Dispatch*'s billing practices—sending an invoice with overlapping dates and using the overlapped payments to pay for future newspapers—are deceptive, illegal, unethical, or in violation of the law. In fact, the record shows the opposite; overlaps are not "incorrect," "wrong," or bad policy. *See* Doc. [107-6] at 19 (66:2–4) ("The thought of going after something to reduce the overlaps is implying that the overlaps are wrong, and they are not necessarily wrong"); *Id.* at 27 (100:25; 101:1–4) ("Bills can appear to be incorrect when in fact they're not technically mathematically incorrect."); Doc. [107–1] at 52 (199:22–24) ("And so I don't think we would have had a policy that there should be no overlapping billing dates."). Moreover, Missouri courts have found no MMPA violations where newspapers used similar billing practices to the *Post-Dispatch*. *See, e.g.*, *O'Shaughnessy v. Cypress Media, L.L.C.*, 208 F. Supp. 3d 1064, 1072 (W.D. Mo. 2016) (granting summary judgment in favor of newspaper-defendant who utilized a similar billing system). Indeed, the *Post-Dispatch*'s billing practice could have been more transparent from the beginning, but as a matter of law this is not a violation of the MMPA. These facts defeat the third and fourth elements of this claim: that the *Post-Dispatch* acted deceptively, and that Plaintiff suffered an ascertainable loss as a result of any deception.

Accordingly, Defendants are entitled to summary judgment on Counts V–VI.

### 3. Breach of Implied Covenant of Good Faith and Fair Dealing

Count II alleges Defendants breached an implied covenant of good faith and fair dealing. "Missouri law implies a covenant of good faith and fair dealing in every contract." *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 412 (Mo. Ct. App. 2000). To establish a claim for breach of this implied duty, Plaintiff must prove that Defendants used "express contract terms in such a way as to evade the spirit of the transaction or to deny a party an expected benefit." *Id.* Plaintiff "bears the burden of providing *substantial* evidence to show bad faith" on Defendant's part. *Id.* (emphasis added).

Here, Plaintiff argues the *Post-Dispatch* acted in "bad faith" by billing him for "overlapping days" where they sent Plaintiff an invoice for days already included and paid for as part of the previous bill, thereby "double-billing." Doc. 17 ¶¶ 86–89. However, Plaintiff failed to put forth evidence that the *Post-Dispatch* used any provision or term of Plaintiff's contract to avoid the spirit of the contract, deny Plaintiff an expected benefit, or otherwise act in bad faith. Rather, the undisputed facts show the *Post-Dispatch* provided Plaintiff with the amount of newspaper content that he expected, *O'Shaughnessy*, 208 F. Supp. 3d at 1072 (finding no breach of the implied covenant of good faith and fair dealing because the newspaper provided Plaintiff with the amount of newspaper content bargained for), and only deducted the applicable rate *once* for a single newspaper, regardless of any overpayment.

Accordingly, Defendants are entitled to summary judgment on Count II.

### 4. Unjust Enrichment and Money Had and Received

Claims for unjust enrichment (Count III)[8] and money had and received (Count IV)[9] are both founded upon equitable principles where a defendant's acceptance and retention of money was unjust. Plaintiff alleges Defendants wrongfully collected and improperly retained Plaintiff's money based on their practice of double-billing subscribers as Defendants allegedly accepted money for which subscribers had already paid for in full. As discussed above in Section 1, Plaintiff never paid twice for the same newspaper and failed to put forth evidence that his payments exceeded the number of newspapers received. Moreover, as discussed in Section 2, Defendants' retention of the overlapping payments (and using the overlap in payments to cover future newspapers) was not unjust, thus, these claims similarly fail.

Accordingly, Defendants are entitled to summary judgment on Counts III and IV.

### Conclusion

On the undisputed facts, the *Post-Dispatch* sent Plaintiff invoices with overlapping dates and Plaintiff paid those invoices with dates covering both Terms. However, Plaintiff never paid twice for a newspaper; Plaintiff received the benefit of the bargain, thus, he suffered no damages. Moreover, Plaintiff failed to establish that Defendants billing processes violate any applicable law or existing precedent. Accordingly, Plaintiff has failed to make a sufficient showing on essential

---

[8] Count III is an action for unjust enrichment. Doc. [17] ¶¶ 98–105. The essential elements of unjust enrichment are: (1) the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; and (3) that it would be unjust to allow the defendant to retain the benefit. *Roberts v. Roberts*, 580 S.W.3d 600, 605 (Mo. Ct. App. 2019).

[9] Count IV is an action for money had and received, alleging Defendants received money from him to which it was not entitled by "double-billing" them. Doc. [17] ¶¶ 107–109. The elements of money had and received are: "(1) the defendant received or obtained possession of the plaintiff's money; (2) the defendant thereby appreciated a benefit; and (3) the defendant's acceptance and retention of the money was unjust." *Pitman v. City of Columbia*, 309 S.W.3d 395, 402 (Mo. Ct. App. 2010).

elements of his claims such that Defendants are entitled to a judgment as a matter of law on all six claims (Counts I–VI).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, Doc. [108], is **GRANTED**.

Dated this 3rd day of December, 2021.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE